[Cite as *In re G.D.*, 2015-Ohio-4669.]

STATE OF OHIO        )           IN THE COURT OF APPEALS
                         )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: G.D.                       C.A. No.     27855
      G.D.

                                     APPEAL FROM JUDGMENT
                                     ENTERED IN THE
                                     COURT OF COMMON PLEAS
                                     COUNTY OF SUMMIT, OHIO
                                     CASE Nos.    DN 13-01-0083
                                                   DN 13-01-0084

DECISION AND JOURNAL ENTRY

Dated: November 12, 2015

WHITMORE, Judge.

**{¶1}** Appellant, James Z. ("Father"), has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor children, twins Ge.D. and Gi.D., and placed them in the permanent custody of Summit County Children Services ("CSB"). This Court affirms.

I

**{¶2}** James Z. ("Father") and Morgan D. ("Mother") are the parents of twins, Ge.D. and Gi.D., born January 23, 2013. Only Father has appealed from the judgment of the trial court.

**{¶3}** Mother resided with Father in Florida until they moved to Ohio in 2012. At that time, Mother was pregnant with the twins. In January 2013, the twins were born prematurely in an Akron hospital. They remained in the hospital for a few days and then went home with their parents. CSB became involved with the family upon concerns that Mother had failed to obtain

proper prenatal care and had used illegal drugs while pregnant. The agency learned there were no other children in the home, despite the parents' claims that there were, and that the parents have a history with children services as well as criminal histories in Florida. CSB filed a dependency complaint seeking emergency temporary custody of the twins on January 30, 2013. The parents attended the shelter care hearing, at which time, the trial court appointed an attorney to represent each of them. Shortly thereafter, Father was arrested, confined at a local jail, and eventually extradited to Florida to face criminal charges. Thereafter, the twins were adjudicated dependent and were placed in the temporary custody of the agency. The trial court adopted CSB's proposed case plan, but removed Father's objectives because he was not expected to be able to return to Ohio anytime in the near future.

{¶4} In due course, CSB moved for permanent custody of the twins. The trial court granted the motion, finding that the children could not be returned to either parent within a reasonable time or should not be returned to them based on factual findings under R.C. 2151.414(E)(1), (E)(4), and (E)(5), as well as that permanent custody was in the best interest of the children. Father appealed, and the judgment was reversed by this Court because the evidence did not clearly and convincingly support any of the findings entered under R.C. 2151.414(E). *See In re G.D.*, 9th Dist. Summit No 27337, 2014-Ohio-3476, ¶ 18, 20-21, 22, 25.

{¶5} Following remand, CSB again moved for permanent custody of the twins. The motion was granted by the trial court and both parents' parental rights were terminated. Father has appealed and has assigned five errors for review.

II

**Assignment of Error I**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AS THE

EVIDENCE WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} Father contends that the judgment of the trial court granting permanent custody of the twins to CSB is against the weight of the evidence. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant permanent custody to a proper moving agency. The statute requires the court to find, by clear and convincing evidence, that (1) one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) permanent custody is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶7} The trial court found that the first prong of the permanent custody test was satisfied because the twins could not be returned to either parent within a reasonable time or should not be returned to their care. In support of that finding, the trial court relied on R.C. 2151.414(E)(5) (Father was incarcerated for an offense committed against a sibling of the twins) and R.C. 2151.414(E)(11) (both parents had their parental rights involuntarily terminated with respect to a sibling of the twins, and have failed to prove that they can, nevertheless, provide a legally secure permanent placement and adequate care for the children). The trial court also found that the twins had been in the custody of CSB for 12 or more months of a consecutive 22-month period under R.C. 2151.414(B)(1)(d).

{¶8} On appeal, Father contends, inter alia, that the evidence does not clearly and convincingly support either of the findings under R.C. 2151.414(E). This Court concludes that this argument is not well taken. Only one of the findings under R.C. 2151.414(E) must be met in

order for the first prong of the permanent custody test to be satisfied. *See In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 11. In regard to R.C. 2151.414(E)(11), Father claims that the document admitted into evidence as CSB Exhibit 2, which purportedly reflects that both parents had their parental rights involuntarily terminated as to S.D. in Florida, contains "no certification that a judge has signed the document" and also that the document "was insufficient to stand on its own." Our review of the document reveals that it does, in fact, bear a judge's signature as well as certification by a deputy clerk of court that it is a true and correct copy of the trial court judgment. Furthermore, as a self-authenticated document under Evid.R. 902(4), it is admissible under Evid.R. 803(8) as a public record exception to the hearsay rule. *See In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 11. In addition, unlike the first trial at which Mother was not present and did not testify, Mother attended the most recent permanent custody hearing and directly testified that Father is the biological parent of S.D., thus providing evidence that S.D. is a sibling of the twins. Because we conclude that the evidence adduced clearly and convincingly supports the trial court's finding on this point, it is unnecessary to address the alternative first-prong findings made by the trial court.

{¶9} Father also contests the second-prong finding that permanent custody is in the twins' best interest. When determining whether a grant of permanent custody is in the children's best interest, the juvenile court must consider all the relevant factors, including those enumerated in R.C. 2151.414(D): the interaction and interrelationships of the children, the wishes of the children, the custodial history of the children, and the children's need for permanence in their lives. *In re R.G.*, 9th Dist. Summit Nos. 24834 & 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711,

2002 WL 5178, *3 (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

{¶10}  First, the record demonstrates that the children did not demonstrate a bond with Mother during their visits.  Mother's attendance at visitation was sporadic even when she was not incarcerated and able to attend, but she was also incarcerated twice (misdemeanor theft and burglary) while this custody case was in process.  For his part, Father last visited with the twins when they were just one month old.  Soon after that, he was arrested and extradited to Florida where he has remained.  Since Father's incarceration, he has communicated with his children only through occasional "pictures and little things" sent by way of the caseworker.

{¶11}  The paternal grandmother attended about three visits with the twins and conveyed a desire to maintain a relationship with them, but did not visit consistently and, according to the caseworker, admits that she is "a little bit older" and has to focus on her care-giving responsibility for her own mother.  The paternal grandmother did not file a motion for legal custody.  There is no evidence that the children have an on-going and positive relationship with any other relatives.

{¶12}  The children were said to be doing well in the foster home.  They get along well with the foster parents and the two school-age children in the home.

{¶13}  Second, the wishes of these young children were expressed by the guardian ad litem.  The guardian ad litem stated that the children had resided with their foster family for virtually their entire lives and that it would be traumatic for them to be removed from that home.  The guardian ad litem also reported that the children have no relationship with Father, as he was extradited to Florida shortly after their removal.  She concluded that it would be in the best interest of the children to be placed in the permanent custody of CSB.

{¶14} Third, the custodial history of the twins is that they resided with Mother and Father for one week before they were removed from that home. The twins have resided with a single foster family since that time, nearly two and one-half years.

{¶15} Finally, the trial court found that granting permanent custody to CSB was the only way to assure a legally secure permanent placement for the twins. The caseworker investigated a number of placement options among relatives and "non blood kinship" individuals received as a result of a mass e-mail sent by the maternal grandmother. Reviews were conducted through the Interstate Compact on the Placement of Children ("ICPC") as well as by CSB. Two maternal relatives decided that they were not able to provide a long-term placement for the twins. Several acquaintances were found to be unacceptable either through ICPC review or by CSB. None filed a motion for legal custody or testified in court.

{¶16} Father points to the fact that a "kinship family" had received ICPC approval in support of his claim that a legally secure permanent placement could have been obtained without granting permanent custody. The caseworker testified that while an ICPC assessment of that family was approved in May 2013, the agency did not place the children with the California family at that time because the family lived in California, was not related to the children, had never met the children, and did not know the children or the family. The agency believed that it was in the best interest of the children to remain with the foster family. *See* R.C. 2151.414(D)(1)(d).

{¶17} The record indicates that the California couple did not appear in court at any point and did not file a motion for legal custody with the trial court. Neither Mother nor Father filed a motion for legal custody with this couple either. There is no evidence that the couple came to Ohio to visit the children or even sent letters to the children at any point. Indeed, after the initial

approval by ICPC, there is no evidence that this couple made any effort to develop a relationship with the children whatsoever. Accordingly, there is no evidence that the couple had a serious interest in being considered as a permanent placement for the twins or that placement with this couple would be in the children's best interest.

{¶18} Finally, Father complains that the new motion for permanent custody was docketed for one of the twins ("Ge.D"), but not for the other (Gi.D."). Father's expressed concern appears to be that the new motion contained the additional claim that the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period, and, because it was not docketed for Gi.D., Father claims that he is entitled to a reversal of the trial court's finding in regard to Gi.D. As noted above, only one first-prong finding must be sustained in order to support the judgment of the trial court. *See In re S.G.*, 2015-Ohio-2306, ¶ 11. Because we have affirmed the trial court's first prong determination that the children cannot or should not be placed with a parent based on a finding that Father had his parental rights involuntarily terminated with respect to a sibling of the twins, the "12-of-22" finding is unnecessary to sustain the trial court judgment and Father's argument does not reveal any prejudice to him.

{¶19} To the extent that Father is claiming that the purported defect in docketing affects personal jurisdiction, any defect is waived because Father's attorney did not object to service, appeared at the permanent custody hearing, and fully participated in the hearing in regard to both children. *See In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, ¶ 43. ("Personal jurisdiction over a party may be obtained not only through proper service of process, but also by the voluntary appearance of the party or his legal representative or by actions of the party or his legal representative that constitute an involuntary submission to the jurisdiction of the court.")

{¶20} The record does not demonstrate that the trial court clearly lost its way and created a manifest miscarriage of justice. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Therefore, the judgment is not against the weight of the evidence. *See id*. Consequently, the trial court did not err in terminating the parents' parental rights and in placing Ge.D. and Gi.D. in the permanent custody of CSB. Father's first assignment of error is overruled.

### Assignment of Error II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ADMITTED INTO EVIDENCE [A] JOURNAL ENTRY OF CONVICTION WHEN THE EXHIBIT WAS INSUFFICIENT EVIDENCE TO ESTABLISH THAT FATHER WAS THE DEFENDANT IN THAT PRIOR CASE.

{¶21} Father claims the trial court erred in admitting into evidence CSB Exhibit 1, a document proffered to establish a criminal conviction of Father by the State of Florida. Father does not dispute that the proffered document is a certified copy of a judgment of conviction, but rather claims that CSB failed to provide sufficient evidence to identify Father as the offender in CSB Exhibit 1.

{¶22} To the extent that this assignment of error is relevant to establishing the first prong of the permanent custody test, the argument is moot. Because the trial court properly relied on R.C. 2151.414(E)(11) in supporting the first prong of the permanent custody test, this argument, which would be relevant to an alternative finding under R.C. 2151.414(E)(5), is moot. To the extent that this issue might otherwise reflect prejudice to Father, we address it here.

{¶23} In support of his argument, Father has urged us to follow this Court's decision in *State v. Greer*, 9th Dist. Summit No. 26470, 2013-Ohio-4267, and other criminal cases cited in that decision that have relied on R.C. 2945.75(B)(1) to assert that a defendant may not be shown

to have a previous conviction by "name alone," *Greer* at ¶ 22, but rather that identity must be proved by presenting "a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar[.]" R.C. 2945.75(B)(1). Father claims that CSB failed to present evidence of his identity by date of birth, social security number, or the sort of evidence that was accepted in cases decided under R.C. 2945.75(B)(1).

{¶24} R.C. 2945.75(B)(1) is often utilized to enhance the degree of a current conviction based on the existence of a previous crime perpetrated by the same person. The Ohio Supreme Court has explained that R.C. 2945.75(B)(1) reflects one of the possible methods for proving the existence of a criminal conviction "beyond a reasonable doubt." *State v. Gwen*, 134 Ohio St.3d 284, 2012 Ohio-5046, ¶ 22. The burden of proof necessary to support a judgment for permanent custody to a children services agency, however, is not "beyond a reasonable doubt, but rather "clear and convincing." *See* R.C. 2151.414(B)(1). Consequently, we are bound only to review the record of the permanent custody case before us to determine whether there is clear and convincing evidence that Father is the same person identified in the judgment entry admitted into evidence as CSB Exhibit 1.

{¶25} CSB Exhibit 1 is a certified copy of a judgment of conviction from the Twelfth Judicial Circuit in and for Sarasota County, Florida for an individual with the same first and last names and same middle initial as Father. The document reflects that the defendant was convicted on February 12, 2014 of three counts of fondling or molesting a child under 12, one count of attempted fondling or molesting a child under 12, and one count of sexual battery of a child under 12, and that the defendant was sentenced to three minimum mandatory sentences of 25 years, one term of 15 years, and one minimum mandatory life sentence, respectively. The

document further indicates that the defendant was credited with 343 days for time incarcerated before imposition of this sentence.

{¶26} A review of the evidence adduced in the trial court as well as the original documents in the record before this Court clearly and convincingly support the conclusion that Father is the same individual named in the judgment of conviction identified as CSB Exhibit 1. Those facts include the following matters.

{¶27} Initially, we note that the caseworker testified that she witnessed Father's arrest in late February 2013, while she, her supervisor, and both parents were in the midst of a planning meeting. The amount of time credited to the Florida defendant in the judgment of conviction, 343 days, correlates to the length of time from Father's arrest in late February 2013, until sentence was imposed on the Florida defendant on February 12, 2014.

{¶28} The record also demonstrates that, following the adjudicatory hearing in April 2013, the magistrate found that Father "was recently arrested, jailed, and extradited to Florida on a charge of sexual battery." Father's attorney did not object to the finding. Subsequently, at the permanent custody hearing, Father's attorney requested that Father be permitted to participate in the hearing telephonically. Eventually, local court personnel were able to make telephone-contact with Father while he was a prison inmate.

{¶29} In addition, several documents filed by Father or his attorney constitute concessions and support the conclusion that Father is the person named in CSB Exhibit 1. First, Father's attorney filed a motion on March 14, 2013, to request transport of Father from the Summit County Jail to the Juvenile Court for the adjudicatory hearing set for April 3, 2013. Second, on November 14, 2014, Father sought a "telephonic appearance" on CSB's motion for a reasonable efforts bypass. Father's motion indicates that he was then "a prisoner confined within

the Florida Department of Corrections and unable to physically appear before this court." Father signed the document with a prison number and sent it from an address in the Columbia Correctional Institution in Lake City, Florida. Third, Father filed three sequential motions for a continuance of the permanent custody hearing based on: (1) currently having a "criminal [t]rial pending in Florida," (2) currently having a criminal trial that "will start mid-February [2014]," and (3) currently having a pending appeal from a conviction on February 12, 2014. The last motion for continuance has a notice of appeal attached and that notice indicates that Father was appealing to the Second District Court of Appeals, located in Sarasota County, in the State of Florida from an order rendered on February 12, 2014. The document is captioned with the same case number as is printed on CSB Exhibit 1. Finally, following the local court's final order in the present case, terminating Father's parental rights, Father moved for appointment of appellate counsel based on the fact that he "is in a Florida State Prison currently sentenced to life on a non-related offense."

**{¶30}** Based on this record, we have no difficulty in concluding that the evidence clearly and convincingly establishes that Father is the same person that was convicted of five felony counts involving sexual offenses against young children in Florida and who is sentenced to a lengthy prison term in that state. Father's second assignment of error is without merit.

## **Assignment of Error III**

FATHER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY DID NOT REQUEST FATHER TO BE TRANSPORTED OR ALTERNATIVES FOR FATHER'S PARTICIPATION PRIOR TO THE PERMANENT CUSTODY TRIAL.

**{¶31}** Father claims that his trial lawyer provided ineffective assistance of counsel because he failed to request that Father be transported to the permanent custody hearing or to make other arrangements for his participation in advance of the hearing.

{¶32} The test for ineffective assistance of counsel used in criminal cases is equally applicable to permanent custody proceedings. *In re C.M.,* 9th Dist. Summit Nos. 23606, 23608, and 23629, 2007-Ohio-3999, ¶ 27. This standard two-part test requires a demonstration of deficient performance and resultant prejudice. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984); *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Proof of both parts of the test is necessary to establish the claim of ineffective assistance of counsel. *Bradley* at 142-143.

{¶33} Ohio courts, including this one, have recognized that parents have a constitutionally protected right to be present at permanent custody hearings, but they have also recognized that such right is not absolute if the parent is incarcerated. *See, e.g., In re C.M.,* at ¶ 14. "The fundamental requirement of due process is an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976), quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). Accordingly, Father's due process right to be heard could have been satisfied by arranging for his presence at the permanent custody hearing or by an alternate method of meaningful participation. *See, e.g., In re S.A.,* 2d Dist. Clark No. 07-CA-110, 2008-Ohio-2225, ¶ 12.

{¶34} In this case, trial counsel failed to request that Father be transported to the permanent custody hearing or to arrange for a deposition or affidavit by Father. Trial counsel did belatedly request that Father be allowed to participate by telephone. The request was not made until the morning of the hearing and resulted in Father being able to participate by telephone for part of the afternoon session of testimony. We need not reach the question of whether counsel provided Father with an opportunity to be heard in a meaningful manner, however, because Father has failed to demonstrate resultant prejudice. Prejudice is demonstrated

when the appellant proves that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceedings would have been different. *Strickland* at 694.

{¶35} In this case, Mother did not appeal, and no friends or relatives filed motions for legal custody or testified in court in an effort to secure custody. The only custodial option before the trial court was Father, and Father was serving a life sentence plus three 25-year sentences and a 15-year sentence in a Florida prison for sexual offenses against young children. Father has failed to demonstrate that, had he participated in the hearing, there is a reasonable probability that the result of the proceedings would have been different. *See id.* Accordingly, Father's third assignment of error is overruled.

### Assignment of Error IV

THE TRIAL COURT COMMITTED PLAIN, REVERSIBLE AND STRUCTURAL ERROR WHEN IT ALLOWED TESTIMONY FROM AN UNSWORN WITNESS AND THEN BASED [ITS] DECISION UPON THE TESTIMONY OF SAID UNSWORN WITNESS IN VIOLATION OF FATHER'S STATE CONSTITUTIONAL RIGHTS AS GUARANTEED BY ARTICLE I, § 7 OF THE OHIO CONSTITUTION.

{¶36} Father assigns error to the fact that the foster father addressed the court without being sworn in as a witness and asks that we consider this as plain error. He claims that the trial court erroneously relied on the foster father's statement in its opinion.

{¶37} The record reveals that after hearing all the evidence and closing arguments, the trial court noted the presence of the foster parents in the courtroom and invited them to speak, stating that the law allows them to make a statement. The foster father made a brief comment on behalf of his wife and himself. He stated:

We have loved on the children to the best of our ability and we understand that we are foster parents first. If for whatever reason the court should deem it necessary to grant permanent custody to the state, the children will have a place to call home.

He then offered to show a picture of the twins with their own biological child and a niece to the trial court. The court specifically inquired if there was an objection to looking at the picture. No objection was made to the picture or to the statement.

{¶38} We are not aware that the law affirmatively provides for foster parents to make unsworn statements in permanent custody proceedings. No citation was offered by the trial court, nor has CSB cited any legal authority in support of such a claim in its appellate brief. We recognize that foster parents are occasionally sworn and testify when called as witnesses for one of the parties to a custody proceeding. As is the case with any witness, the foster parent would be subject to cross-examination and such testimony would be weighed and assessed for credibility by the trier of fact. In that light, we note that Evid.R. 603, R.C. 2317.30, as well as Article I, Section 7 of the Ohio Constitution all require that an oath be administered to a witness before the witness may testify. *In re Leonard H.,* 6th Dist. Lucas No. L-00-1258, 2001 WL 60694, *1 (Jan. 26, 2001). *See also* R.C. 2151.424(A) (allowing foster caregivers or relatives to present "evidence" at several types of hearings, including permanent custody hearings). While it has been said to be error for the trial court to admit unsworn testimony, such error is generally waived if a timely objection is not made. *See Stores Realty Co. v. Cleveland,* 41 Ohio St.2d 41, 43 (1975). "'This is because the failure to administer an oath can easily be corrected at the time; an attorney may not fail to object and then cite the lack of an oath as error.'" *In re Leonard H., supra,* quoting *State v. Norman,* 137 Ohio App.3d 184, 198 (1st Dist.1999). Consequently, any error in allowing the statement would have been forfeited by Father's lack of objection.

{¶39} Moreover, the matter does not rise to the level of plain error in this case. By way of comparison, this Court recently found plain error in the failure of a magistrate to swear in the sole witness on each side of a civil case for a money judgment where the parties were proceeding

pro se. *See Wasaleski v. Jasinski*, 9th Dist. Lorain No. 14CA010660, 2015-Ohio-2307. In that case, there was no sworn testimony at all, and the magistrate clearly relied upon unsworn testimony in rendering judgment. *Id.* at ¶ 3. In the present case, all of the key witnesses were sworn in. The foster father presented the only unsworn statement in the case, and it is not at all clear that the trial court "based its decision," as claimed in Father's assigned error, upon that statement. This is so because the findings of the trial court are fully supported by the testimony of properly sworn witnesses.

{¶40} For example, the guardian ad litem stated the following during her sworn testimony:

> [T]he children are doing very well in their foster home. They're very bonded to foster mom and dad. They're the only parents they've ever known. They've been there since * * * a few days old. They're very bonded to their foster siblings * * * a foster brother and a foster sister. * * * [T]he reality of the situation is these kids are two years and three months [old]. They've been in the same foster home for their entire life. [sic] They are very well bonded to foster family. It is a foster-to-adopt home. * * * At this point in time the reality is this is all these kids have ever known * * * .

On cross-examination by Father's attorney, the guardian ad litem stated that there was no plan to change the children's placement.

{¶41} Similarly, the caseworker testified that the children have a greater bond with the foster parents and are connected with them "on a much deeper level" because they have resided with them "since they were born." She stated that "if they were removed from the [foster] parents, [the trauma on them] would be devastating for these young children who only know them as their parents."

{¶42} In her written opinion, the trial judge found that the children

> have been in the same foster home throughout their lives. This is the only family these children have ever known. They hope to adopt the children if permanent custody is granted. * * * The children have been placed in the same home for

their entire lives. They are well bonded to the foster parents and deserve permanency.

{¶43} The trial judge did not cite the foster father in her opinion, nor did she state that she was relying on the foster father's statement in her opinion. It does not appear from the record that she relied on the unsworn statement of the foster father in any way. Rather, it appears that the trial judge relied instead on the properly admitted testimony of the guardian ad litem and the caseworker in making her findings and in crafting her opinion. Accordingly, Father has not demonstrated prejudice. Father's fourth assignment of error is overruled.

## Assignment of Error V

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT DISMISS THE COMPLAINT UPON FATHER'S MOTION BECAUSE HE WAS NOT ADDED TO THE CASE PLAN IN AN APPROPRIATE, TIMELY MANNER.

{¶44} Father claims that, upon remand, the trial court erred in failing to dismiss the original complaint and in failing to conduct another initial dispositional hearing. This is so, he asserts, because "the original dispositional order adopting the case plan was utterly defective" due to him being removed from the case plan at the time of disposition. Father claims that the failure to include him on the case plan violates principles espoused in *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, requiring case planning reunification efforts under specified circumstances. Father maintains that the trial court could not simply conduct another dispositional hearing following remand because such hearing is required to be conducted within 90-days of the filing of the complaint, based on the language of R.C. 2151.35(B)(1) and Juv.R. 34(A), and that timing is no longer possible. The remedy for failure to observe the 90-day limit for dispositional hearings set forth at R.C. 2151.35(B)(1) is to move the court for dismissal without prejudice. *Id.* Accordingly, following remand, Father moved to dismiss the original

complaint. CSB opposed the motion. The trial court denied the motion to dismiss and Father assigns that decision as error on appeal.

**{¶45}** Father has cited *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, in support of his position. In that case, this Court concluded that it was plain error to not include the father on a reunification case plan where the circumstances were described as "egregious." *Id.* at ¶ 34. The circumstances of that case were that the father was not given a case plan despite the fact that CSB knew the identity and location of the father from the beginning of the case, the father had contacted CSB and expressed interest in reunifying with his child, and there was no basis for CSB to obtain a reasonable efforts bypass under R.C. 2151.419(A)(2). *Id.* at ¶ 34, 40.

**{¶46}** The circumstances of the present case are very different. Father personally appeared at the shelter care hearing and an attorney was appointed to represent him. Prior to the adjudicatory hearing, Father was arrested, incarcerated, and eventually extradited to Florida on criminal charges. Although Father was not present at the dispositional hearing, his attorney was present and the record does not reflect that he objected to the removal of Father from the case plan at that time or subsequently. Father has apparently remained incarcerated in Florida since that time upon a life sentence, three 25-year sentences, and a 15-year sentence. When the case was returned to the trial court on remand, CSB proposed an amended case plan for both parents. Father's portion of the case plan required him to participate in mental health services offered through the prison, complete an anger management class and a batterer's intervention program, obtain and maintain a safe stable home for the children, and demonstrate the ability to provide for the needs of the children.

**{¶47}** Moreover, upon subsequent motion by CSB, the trial court found that CSB was not required to make reasonable efforts to reunify the family based on its finding that Father's

parental rights had been involuntarily terminated as to S.D., and that S.D. is a sibling of the twins. Accordingly, the trial court ordered that CSB was not required to make reasonable efforts to return the children to their home. *See* R.C. 2151.419(A)(2). Father has not challenged this order on appeal. Upon these facts, we conclude that the trial court did not err in denying the motion to dismiss the complaint. Father's fifth assignment of error is overruled.

## III

{¶48} Father's five assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

<u>APPEARANCES:</u>

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

ANGELA KILLE, Attorney at Law, for Appellee.

HOLLY FARAH, Guardian ad Litem.