[Cite as *In re L.B.*, 2017-Ohio-7049.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: L.B.
    A.B.

C.A. Nos.    28483
                28494


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 14-12-0788
                DN 14-12-0789

DECISION AND JOURNAL ENTRY

Dated: August 2, 2017

CARR, Judge.

{¶1}    Appellants, L.J. ("Mother) and A.B. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to two of their minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother and Father are the biological parents of L.B. and A.B., twins born August 17, 2014, at 25 weeks' gestation. Mother gave birth to another child during this case, but that child is not a party to this appeal.

{¶3}    The twins were born at a hospital in Willard, Ohio, where Father was temporarily working. Because that hospital was not equipped to provide appropriate care for the premature twins, they were transferred to Akron Children's Hospital to receive specialized care in the

neonatal intensive care unit. Both children had serious medical problems and remained hospitalized for the next several months.

{¶4} On December 2, 2014, while the twins were still in the hospital, CSB filed complaints alleging that they were dependent children because the parents lacked stable housing and income, had not been regularly visiting the children, and were threatening to remove the children from the hospital and take them to their home state of North Carolina. The children were later adjudicated dependent and placed in the temporary custody of CSB.

{¶5} The case plan required the parents to engage in treatment for their mental health and substance abuse problems, obtain and maintain stable income and housing, and learn how to meet the basic and special medical needs of the children. Mother visited the children, attended some of their medical appointments, and complied with the case plan goals for many months. At the end of 2015, however, Father was extradited to North Carolina to face criminal charges. Shortly afterward, Mother also returned to North Carolina. After Mother moved back to North Carolina, she stopped working on the case plan and returned to Ohio only twice to visit L.B. and A.B.

{¶6} The parents identified the paternal grandmother ("Grandmother), who lived in North Carolina, as a relative who could take custody of the twins. CSB filed an application with North Carolina through the interstate compact for the placement of children to investigate Grandmother. Although Grandmother's home was apparently deemed suitable, Grandmother did not follow through in seeking custody or visitation with the children. She came to Ohio only once or twice to visit the children and never received any training about meeting their extensive medical needs. After the parents moved back to North Carolina, Grandmother did not return to Ohio to visit the children.

{**¶7**}  CSB eventually moved for permanent custody of L.B. and A.B.  Each parent alternatively moved for legal custody of the children.  The parents would later state that they also supported Grandmother having legal custody of the children.  No one filed a motion for the children to be placed in the legal custody of Grandmother, however, nor did Grandmother ever indicate to the trial court that she was willing to take legal custody of the children.  *See* R.C. 2151.353(A)(3).  By the time of the hearing, Mother had not seen the children for more than five months and Father and Grandmother had not seen them for nearly one year.

{**¶8**}  Following a hearing on the competing dispositional motions, the trial court terminated parental rights and placed L.B. and A.B. in the permanent custody of CSB.  The parents separately appealed and their appeals were later consolidated.  This Court will address their assignments of error jointly because they are closely related.

II.

### MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT DENIED MOTHER'S MOTION FOR A CONTINUANCE, THUS DEPRIVING MOTHER OF HER CONSTITUTIONAL RIGHT TO DUE PROCESS.

### FATHER'S ASSIGNMENT OF ERROR II

IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO DENY MOTHER'S MOTION FOR A CONTINUANCE OF THE PERMANENT CUSTODY TRIAL.

{**¶9**}  Mother and Father both argue that the trial court committed reversible error by denying Mother's request to continue the permanent custody hearing.  Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties."  Moreover, absent an emergency or unforeseen circumstances, "[a]ll requests for continuances must be made in writing and filed seven days before the scheduled hearing date."  Loc.R.

5.03(B) of the Court of Common Pleas of Summit County, Juvenile Division. Mother filed no timely, written motion for a continuance. Instead, at the commencement of the hearing, Mother's counsel orally requested a continuance of the hearing.

{¶10} In her appellate brief, Mother raises a due process argument that she did not assert in the trial court: that a continuance was necessary to enable Grandmother to come to Ohio to testify at the hearing. At the hearing, Mother did not mention anything about Grandmother wanting to testify. Instead, the sole argument in support of Mother's request for a continuance was that Grandmother, whom the parents named as a potential custodian for the children, had lost her home in a hurricane in North Carolina one month earlier. Because Grandmother recently obtained new housing, Mother requested the continuance so that a new interstate assessment of her home could be completed.

{¶11} The decision to grant or deny a continuance lies within the sound discretion of the trial judge, which requires a balancing of "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). A trial court's determination of whether to continue a hearing should consider factors such as the length of the continuance sought; whether the hearing has already been continued; and the inconvenience to other parties and/or counsel, witnesses, and the trial court. *Id.* at 65, 67-68.

{¶12} At the hearing, given that Grandmother's home had been destroyed more than one month earlier, Mother's counsel offered no reason for failing to file a timely, written request for a continuance. She was also unable to estimate how long would be needed for Grandmother's new housing to be inspected. Mother sought a continuance for an unspecified period of time. Despite arguments in the parents' briefs to the contrary, Mother did not request a two-week

continuance, nor did she suggest that two weeks would be sufficient for an inspection of Grandmother's new home to be completed. A period of two weeks was mentioned only by the trial judge, who observed that the case would reach the two-year sunset date in two weeks. The guardian ad litem emphasized that temporary custody could not be extended beyond that time. *See* R.C. 2151.415(D)(4).

{¶13} CSB and the guardian ad litem both opposed a continuance of the hearing. They emphasized that the permanent custody motion had been pending for several months and that all parties and witnesses were prepared to proceed with the hearing that day. Because the parents have failed to demonstrate that the trial court abused its discretion in denying the oral motion for a continuance, Mother's first and Father's second assignments of error are overruled.

## MOTHER'S ASSIGNMENT OF ERROR II

THE DECISION THAT GRANTED PERMANENT CUSTODY OF A.B. AND L.B. TO [CSB] WAS NOT IN THE BEST INTERESTS OF A.B. AND L.B. AS PERMANENT CUSTODY WAS NOT THE LEAST RESTRICTIVE MEANS OF ACHIEVING A LEGALLY SECURE PERMANENT PLACEMENT FOR A.B. AND L.B. AND THE GUARDIAN AD LITEM DID NOT MAINTAIN INDEPENDENCE, OBJECTIVITY, AND FAIRNESS, AS REQUIRED BY SUP.R. 4[8](D)(2)[.]

## FATHER'S ASSIGNMENT OF ERROR I

CLEAR AND CONVINCING EVIDENCE WAS NOT PRESENTED TO WARRANT A FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILDREN, AND THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} The parents also challenge the trial court's permanent custody decision on the merits. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they

or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶15} The trial court found that CSB satisfied the first prong of the test for numerous alternative reasons, including that both children had been in the temporary custody of CSB for more than 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). The parents do not dispute that finding. They confine their arguments to the trial court's determination that permanent custody was in the best interest of L.B. and A.B.

{¶16} Although Father's argument also focuses on whether CSB or the guardian ad litem fulfilled their obligations to consider him as a placement for his children and/or assist him with reunification, he did not raise those arguments in the trial court, nor has he properly raised them through an assignment of error. To the extent that Mother has assigned error to whether the guardian ad litem fulfilled his duties in this case, that argument will be addressed within the context of the best interest analysis.

{¶17} When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, their custodial history, and the need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶18} The interaction between the children and their parents was limited to supervised visitation because neither parent had completed the reunification goals of the case plan.

Although Mother was more compliant with the requirements of the case plan than Father, she stopped participating in case plan services after she returned to North Carolina. Witnesses expressed concern that Father tended to control Mother and was a negative influence on her, yet Mother dropped out of counseling and never addressed that issue. One of Mother's service providers testified that Mother's case with that agency was closed because Mother made the choice to leave her children in Ohio and follow Father to North Carolina rather than work toward reunification with her children.

{¶19} For their entire two-year lives, L.B. and A.B. had lived outside the custody of their parents. Upon their release from the hospital, they were placed in a foster home, where they resided with the foster parents and their four biological children for the remainder of this case. The foster parents had been able to meet the twins' basic needs, extensive medical needs, and had been addressing their developmental delays. Several witnesses testified about the children's many medical problems, their need for extensive day-to-day care, and the significant progress that they had made while living with the foster family. The caseworker and the guardian ad litem opined that the foster family was doing a wonderful job with the twins and that the children had become bonded with the entire foster family. The foster parents were interested in adopting L.B. and A.B. if CSB received permanent custody.

{¶20} Although the parents argue that Grandmother should have been considered as a legal custodian for the twins, Grandmother's interaction with them had been minimal and predated the permanent custody hearing by nearly one year. CSB twice began the process of investigating Grandmother as a possible out-of-state placement for the children, but Grandmother never developed a relationship with them during the two years that this case was pending. She came to Ohio only one or two times and she did not attend the children's medical

appointments or receive any training about how to care for their many medical and developmental needs.

{¶21} Because the twins were only two years old at the time of the hearing, the guardian ad litem spoke on their behalf. He opined that permanent custody was in the best interest of the children because they were thriving in the foster home and none of their biological relatives had shown the commitment or ability to provide for their extensive needs on a consistent and permanent basis. Although Mother faults the guardian ad litem for favoring the foster parents and failing to conduct a more thorough investigation of Grandmother as a potential legal custodian, the guardian testified that he spoke to Grandmother on the phone several times. Moreover, although the parents continued to raise Grandmother's name as a potential relative placement, Grandmother herself had not demonstrated to CSB or the guardian ad litem that she had the desire or ability to provide a permanent home for the children. Grandmother was a virtual stranger to the children, did not know how to care for them, and no one had ever filed a motion for legal custody on her behalf.

{¶22} Because the children had lived in temporary placements for their entire two-year lives, they were in need of a legally secure permanent placement. Because none of their biological relatives had demonstrated an ability and/or desire to provide for their significant, ongoing medical needs on a permanent basis, the trial court reasonably concluded that a legally secure permanent placement would be achieved by placing them in the permanent custody of CSB.

{¶23} The parents have failed to demonstrate that the trial court's best interest determination was not supported by clear and convincing evidence. Mother's second and Father's first assignments of error are overruled.

III.

**{¶24}** The parents' assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MADELINE LEPIDI-CARINO, Attorney at Law, for Appellant.

ANTHONY COSTELLO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.