**[Cite as *In re L.M.*, 2020-Ohio-4451.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: L.M.

C.A. No.    29687

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 19 03 0252

DECISION AND JOURNAL ENTRY

Dated: September 16, 2020

CARR, Presiding Judge.

{¶1}    Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed the child L.M. in the permanent custody of appellee Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}    Mother is the biological mother of L.M. (d.o.b. 3/8/19). Paternity has not been established, and no alleged father participated in the proceedings below.

{¶3}    L.M. was born at 34 weeks' gestation at a time that Mother tested positive for THC, amphetamines, and methamphetamines. Based on Mother's drug use, as well as mental health concerns and pending drug-related criminal charges, CSB filed a complaint alleging that L.M. was an abused and dependent child. The child was later adjudicated abused and dependent and placed in the temporary custody of CSB. The agency's case plan was adopted as the order of the court.

{¶4}   Five months into the case, after neither parent had had any contact with L.M. for more than 90 days, CSB filed a motion for permanent custody. The agency alleged abandonment as its sole first-prong ground for termination of parental rights. Mother filed a motion for legal custody to the maternal grandparents. After a hearing, the juvenile court denied Mother's motion for legal custody to her parents, terminated Mother's and all alleged fathers' parental rights, and awarded permanent custody of L.M. to CSB. Mother filed a timely appeal in which she raises two assignments of error for review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN NOT GRANTING A CONTINUANCE WHEN REQUESTED BY MOTHER'S COUNSEL.

{¶5}   Mother argues that the juvenile court erred by denying her attorney's oral motion to continue the permanent custody hearing. This Court disagrees.

> The decision to grant or deny a continuance lies within the sound discretion of the trial judge, which requires a balancing of "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). A trial court's determination of whether to continue a hearing should consider factors such as the length of the continuance sought; whether the hearing has already been continued; and the inconvenience to other parties and/or counsel, witnesses, and the trial court. *Id.* at 67-68.

*In re L.B.*, 9th Dist. Summit Nos. 28483 and 28494, 2017-Ohio-7049, ¶ 11. Additional factors include "whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [party] contributed to the circumstance which gives rise to the request for a continuance;" as well as any other relevant issues arising from the unique facts of the case. *Unger* at 67-68. Moreover, Juv.R. 23 states that "[c]ontinuances shall be granted only when imperative to secure a fair treatment for the parties." When determining whether a trial court has

abused its discretion, this Court considers whether the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶6} It is well settled that constitutional due process accords parents the right to attend permanent custody hearings. *In re G.D.*, 9th Dist. Summit No. 27855, 2015-Ohio-4669, ¶ 33. Even so, that right is not absolute in cases where a parent is incarcerated. *Id.*, citing *In re C.M.*, 9th Dist. Summit Nos. 23606, 23608, and 23629, 2007-Ohio-3999, ¶ 14.

{¶7} In this case, Mother was in the Portage County jail at the time of the permanent custody hearing. Although her attorney had filed a motion to transport her 14 days in advance of the hearing, he learned that the Summit County Sheriff's Department would not transport inmates from another county. Accordingly, counsel orally requested a continuance on the day of the permanent custody hearing.

{¶8} Mother had not previously requested any prior continuances. While the requested delay was not contrived, it is unclear from the record when counsel learned of the Summit County Sheriff's refusal to transport Mother from out-of-county to the hearing. The guardian ad litem filed a report six days prior to the hearing, indicating that deputies could not bring Mother to court despite the motion to transport. Nevertheless, it is unclear how much time Mother's counsel had to ask for a continuance.

{¶9} All other attorneys, parties, and witnesses were present and ready to proceed with the permanent custody hearing. The matter was being heard by a visiting judge who had previously coordinated with the attorneys to schedule the hearing.

{¶10} Mother's attorney did not specify the length of delay requested. Counsel indicated that Mother was to be released from jail the following week once she pleaded to a lesser offense, but he did not know the terms of Mother's plea deal. Accordingly, if and when Mother would be

released from Portage County jail was mere speculation. In addition, Mother also had a pending criminal case in Summit County for which she was participating in the intervention in lieu of conviction program. Although he asserted that there were no outstanding warrants for Mother in Summit County, Mother's attorney did not note whether or not Mother was in compliance with the terms of the intervention program.

{¶11} Mother was in the Portage County jail based on charges filed against her in that county. Although the Summit County Sheriff's Department protocol did not permit them to transport inmates from out-of-county, this Court does not agree with Mother's assertion that it was the Sheriff's Department's inaction that necessitated her request for a continuance.

{¶12} With the exception of one motion hearing regarding the maternal grandparents' request to intervene, a hearing which took place a month and a half after CSB filed its motion for permanent custody, Mother failed to appear and participate in any prior court proceedings. Although Mother was in and out of jail during the pendency of the case, she did not attend hearings which took place at times when she was no longer incarcerated. Frequently, Mother's whereabouts were unknown, as she failed to remain in contact with the caseworker and guardian ad litem.

{¶13} Mother filed a dispositional motion shortly before the date of the permanent custody hearing. Although it was not a timely filed motion, the juvenile court considered her motion over the assistant prosecutor's objection. In addition, Mother was represented by counsel at the permanent custody hearing. Counsel represented Mother's interest by cross-examining the agency's witnesses and by presenting two witnesses in support of Mother's dispositional motion.

{¶14} Under these circumstances, this Court concludes that the juvenile court was not unreasonable when it denied Mother's motion to continue the permanent custody hearing. A last-minute delay, without prior notice to the visiting judge, attorneys, and parties, would have

inconvenienced all persons present and ready to proceed on the scheduled date. Mother's counsel could not articulate the necessary length of the delay because Mother's release from jail had not yet been determined. The terms of her anticipated plea deal were merely speculative. The cause of Mother's request cannot reasonably be attributed to any other party or entity. Mother evidenced little prior desire to attend court proceedings when she was available to do so. In her absence from the permanent custody hearing, however, she was represented by counsel who proactively advocated on her behalf. Accordingly, Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN DENYING MOTHER'S MOTION FOR LEGAL CUSTODY OF L.M. TO MATERNAL GRANDPARENTS AND IN FINDING THAT IT WAS IN L.M.'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF CSB. TRIAL COURT[']S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} Mother argues that the juvenile court's award of permanent custody of L.M. to CSB was against the manifest weight of the evidence. This Court disagrees.

{¶16} When determining whether a permanent custody judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations omitted.) *In re T.K.*, 9th Dist. Summit No. 28720, 2017-Ohio-9135, ¶ 7. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.

{¶17} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs

of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and (2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶18} The agency alleged, and the juvenile court found, that Mother and all alleged fathers had abandoned the child pursuant to R.C. 2151.414(B)(1)(b). R.C. 2151.011(C) provides:

> For the purpose of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.

{¶19} Mother has not challenged on appeal the juvenile court's first-prong finding that L.M. was abandoned. Moreover, the finding of abandonment is fully supported by the record. No alleged father had any contact with the child at any time during the child's life. Mother had an initial visit with the child on April 1, 2019, but failed to have any further contact with the child by the time CSB filed its motion for permanent custody on August 30, 2019. Although Mother entered jail on April 26, 2019, she had bonded out sometime in May 2019. Nevertheless, Mother failed to visit the child during the 90-day period immediately preceding the filing of the agency's motion. In fact, Mother did not visit the child after the April 1, 2019 visit until sometime in October 2019. She attended only one other visit in November 2019, before the permanent custody hearing at the end of January 2020. Despite the October and November visits, Mother previously failed to have any contact with the child for at least 90 consecutive days prior to the agency's filing

of its permanent custody motion. Mother has not disputed this fact. Accordingly, the juvenile court's first-prong finding of abandonment is not against the manifest weight of the evidence.

{¶20} The juvenile court was next required to find that an award of permanent custody was in the best interest of L.M. When determining the best interest of a child pursuant to R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the custodial history of the child, the interaction and interrelationships of the child, the child's wishes, the need for permanence in the child's life, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶21} L.M. was approximately 11 months old at the time of the permanent custody hearing. Due to her premature birth and exposure to drugs in utero, the child has special needs which have required around-the-clock care. L.M. required 24-hour monitoring for the first eight and a half months of her life because of apnea and other respiratory issues. The child has significant swallowing problems which necessitate the use of a thickening agent in her formula. It is anticipated that her special needs will continue for a significant period of time.

{¶22} L.M. was released from the hospital after her birth directly to the home of her current foster parents. The foster mother does not work outside of the home, while the foster father is in nursing school. His training has allowed him to vigilantly manage the child's breathing issues. The foster parents have a close relationship with their family members who have also helped to provide around-the-clock care for the child.

{¶23} Mother has never had physical possession of the child. Although she was provided opportunities for weekly supervised visitation, Mother only visited with the child approximately three times in 11 months. While Mother was appropriate with the child during those visits, the

child has not developed a bond with Mother. As CSB was evaluating the maternal grandparents as kinship caregivers, they had the opportunity to visit weekly with the child for many months. The grandparents typically visited separately because one grandparent had to stay home to care for another grandchild in their home. L.M. recognized the maternal grandparents and was comfortable with them.

{¶24} The child is well acclimated to her foster home. She is closely bonded with her foster parents who wish to adopt her.

{¶25} Early in the case, the CSB caseworker discussed case plan objectives with Mother, who was required to address basic needs, substance abuse, and mental health concerns. Mother failed to meet any objectives. She had no suitable home for the child. Mother alternated between shelters and jails, although she sometimes stayed in her parents' home during the day. She failed to obtain a substance abuse assessment, although the caseworker believed that Mother was receiving some substance abuse treatment in jail. While those services would "partly" satisfy an objective, the agency required Mother to demonstrate sustained sobriety outside of a controlled environment like jail. Mother failed to address her mental health issues, although the caseworker believed that Mother had scheduled a mental health assessment for some time soon. While Mother spent two brief periods in jail during the case, her whereabouts were unknown outside of jail. The caseworker told Mother that the agency would delay pursuing permanent custody if Mother would begin participating in case plan services, but Mother would disappear without maintaining contact with the caseworker or cooperating with service providers.

{¶26} Recognizing her limitations, Mother did not seek legal custody of L.M. Instead, she requested that her parents receive legal custody of the child. CSB pursued that option by attempting to approve the grandparents as kinship caregivers. A kinship caseworker assessed the

grandparents but was unable to approve them for placement. Because the grandfather consistently works up to 70 hours each week, the grandmother would be the primary caregiver for the child. The agency could not approve the grandmother as a caregiver based on her lengthy history of mental health issues for which she had not received treatment since 2017, her prior involvement with CSB based on her mental health instability and difficulty managing her own children, concerns regarding sexual abuse of Mother as a child, the grandparents' admitted regular use of marijuana, and the grandmother's permitting Mother to come and go in the home. The agency's major concern was the grandmother's denial of mental health issues despite prior diagnoses of a mood disorder, social anxiety, and depression.

{¶27} Hoping to ultimately approve the grandparents as caregivers, the kinship caseworker referred the grandmother for another mental health evaluation in the spring of 2019. Thereafter, the kinship caseworker performed a second assessment for placement. Because the grandmother failed to report her drug use and prior mental health diagnoses during her second evaluation with a mental health assessor, CSB again could not approve the grandparents as kinship caregivers. Had the grandmother disclosed her issues during the second evaluation, the assessor would have referred her for mental health services. Given the grandmother's denial of her issues, however, the caseworker could not ensure the care and safety of the special needs child in the grandparents' home.

{¶28} Some of the agency's concerns regarding the grandmother's ability to overcome her mental health issues and provide appropriate care for the child became apparent during the case. The grandmother would become agitated and loud during visits with the child. She expressed her belief that she had been "railroaded" by CSB. The caseworker noted that the grandmother was easily triggered to anxious behavior, which raised the caseworker's concern that

the grandmother would panic and not be able to properly care for the child if L.M. were sick, crying, or otherwise in distress.

{¶29} During the last three months of the case, the grandparents ceased visiting with the child. The grandfather testified that he did not know that they could continue visiting with the child, and that he relied on the grandmother to arrange the visits with the agency. The grandmother had no explanation for why she led the grandfather to believe that they could no longer visit with the child.

{¶30} Although the foster parents wished to adopt L.M., the foster mother testified that they would be willing to allow the child to have an ongoing relationship with Mother and the grandparents. The grandmother testified, however, that she did not know whether she would maintain contact with the child because she did not know if she could handle having to coordinate with a non-blood caregiver to see the child.

{¶31} The child is too young to express her wishes as to custody. The guardian ad litem opined that an award of permanent custody was in the child's best interest. She premised her recommendation on Mother's failure to establish any bonding with the child, the grandparents' inconsistent contact with the child and failure to provide any items for the child's care during visits, and the foster parents' intensive care to keep the child safe and healthy.

{¶32} Based on a thorough review of the record, this is not the exceptional case where the trier of fact clearly lost its way and created a manifest miscarriage of justice by denying Mother's motion for legal custody to the grandparents and granting CSB's motion for permanent custody. Mother abandoned the child by failing to maintain any contact with L.M. in excess of 90 days. Mother further failed to address concerns regarding her substance abuse and mental health issues, her lack of housing, and her inability to provide for her own basic needs or those of a child. The

grandparents were denied approval as kinship caregivers on two occasions based on the grandfather's absence from the home for significant periods due to work, and the grandmother's ongoing untreated mental health issues. Under the circumstances, the juvenile court's termination of Mother's and all alleged fathers' parental rights, and its award of permanent custody of L.M. to CSB was not against the manifest weight of the evidence. Mother's second assignment of error is overruled.

## III.

{¶33} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant
Prosecuting Attorney, for Appellee.