OPINION
{¶ 1} Tammy Johnson, appellant, appeals from the decision and journal entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of her minor children, Stella, Heather, and Christopher Johnson, to appellee, Franklin County Children Services ("FCCS"), for purposes of adoption. For the following reasons, we affirm.
 {¶ 2} Appellant and Gary Wolford are the natural parents of the three children involved in this consolidated action, Stella, born August 14, 1995, Heather, born January 24, 1997, and Christopher, born September 22, 2000. At the time of trial, Stella was seven years old (almost eight), Heather was six years old, and Christopher was two years old (almost three).
 {¶ 3} On May 14, 1999, FCCS filed a complaint alleging that Stella and Heather were abused, neglected, and dependent children. Included within the complaint were allegations that Stella had suffered severe bruising and swelling on her face reportedly caused by appellant, that Stella had stated that she was often hit by appellant, that Heather has a scar on her right foot reportedly caused by a razor blade, that appellant's home was in a deplorable condition, and that the family has a history with the FCCS because of dirty-home conditions. (See May 14, 1999, Complaint.) On the same day that the complaint was filed, the trial court issued an emergency care order that authorized FCCS to temporarily care for Stella and Heather, and the trial court appointed the Franklin County Public Defender as Stella and Heather's guardian ad litem.
 {¶ 4} In an entry dated August 9, 1999, the trial court dismissed the abuse cause of action and found Stella and Heather to be neglected children, as defined in R.C. 2151.03(A)(2), and dependent children, as defined in R.C. 2151.04(C). The children were returned to appellant's care with court-ordered protective supervision, pursuant to R.C. 2151.353(A)(1). On August 11, 1999, the trial court approved and adopted a case plan, which, inter alia, required appellant to complete a psychological evaluation and follow all recommendations made in consideration of the evaluation, complete parenting classes, ensure her children's personal hygiene, and maintain a clean home.
 {¶ 5} On September 15, 2000, FCCS filed a motion for alternative disposition. According to the motion, on September 8, 2000, an FCCS caseworker visited appellant's home and found Stella, who was five years old at the time, alone outside appellant's home, and appellant, who was nine months pregnant at the time, asleep on a couch inside the home.[1] The motion further alleged that appellant was illegally obtaining and abusing prescription drugs, and that appellant was stopped by the police and ticketed for not having Stella in a car seat. (See Sept. 15, 2000, motion.) On the same day that the motion for alternative disposition was filed, the trial court issued an emergency custody order that authorized FCCS to temporarily care for Stella and Heather. On September 18, 2000, the trial court granted a temporary order of custody to FCCS. In November 2000, the trial court approved and adopted a case plan, which, inter alia, required appellant to refrain from using drugs or alcohol, except as prescribed by a doctor, and complete a court-ordered drug/alcohol assessment, as well as complete random urine screens if deemed necessary.
 {¶ 6} On September 25, 2000, FCCS filed a complaint alleging that Christopher, who was three days old at the time, was a neglected and dependent child. The complaint alleged that appellant tested positive for marijuana and opiates during the week of Christopher's birth, and that appellant was reportedly abusing prescription drugs. The trial court, on the same day that the complaint regarding Christopher was filed, issued an emergency custody order that authorized FCCS to temporarily care for Christopher and appointed the Franklin County Public Defender as Christopher's guardian ad litem. On September 26, 2000, the trial court ordered temporary custody of Christopher to FCCS.
 {¶ 7} On August 7, 2001, the state moved to terminate temporary court commitment to FCCS with respect to Stella, Heather, and Christopher. However, the court, at the request of the state, dismissed these motions.
 {¶ 8} On October 25, 2001, FCCS moved for permanent custody of Stella, Heather, and Christopher or, in the alternative, continuing temporary custody of the children. In August 2002, the guardian ad litem moved for the appointment of separate counsel for Stella and Heather. The guardian ad litem determined that there was a "possible conflict" between the guardian ad litem's recommendation and the children's wishes and desires relating to custody. The trial court appointed independent counsel to represent the interests of Stella and Heather.[2] On January 6, 2003, the children's paternal grandmother, Geniva Whitlock-Wolford, moved for legal custody of the children. Trial was held on FCCS's and Ms. Whitlock-Wolford's motions on April 9, July 8-10, and August 5-6, 2003.
 {¶ 9} In its decision, the trial court found that there was "clear and convincing evidence that the award of permanent custody of Stella Johnson, Heather Johnson and Christopher Johnson to Franklin County Children's Services is in their best interests." (December 4, 2003, Decision and Journal Entry, at 12.) The trial court terminated FCCS's temporary custody, committed the children to the permanent custody of FCCS for purposes of adoption, and terminated the parental rights of appellant, the mother, and Gary Wolford, the father. Id. at 13.
 {¶ 10} Appellant timely appealed, and has assigned the following errors for our review:
I. The Court erred in not providing independent counsel for the children.
II. The Court erred when it determined that the children could not or should not be returned to their mother in a reasonable period of time. this finding is against the manifest weight of the evidence.
A. The Court erred in determining that mother was a drug addict that could not care for her children.
B. The Court erred in determining that tammy johnson would not protect her children from sexual abuse.
 {¶ 11} By her first assignment of error, appellant asserts that the trial court erred by not providing independent counsel for her children.
 {¶ 12} As a preliminary matter, and even though no party has raised the issue in this appeal, we observe that it does not appear that appellant has standing to raise, in this appeal, the issue of whether the children were denied proper legal counsel at trial. In In re Smith (1991), 77 Ohio App.3d 1, 13, the Sixth District Court of Appeals addressed the issue of a parent's standing to raise the issue of a child's deprivation of counsel, and stated as follows:
An appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant. State v. Ward (Sept. 21, 1988), Summit App. No. 13462, unreported, 1988 WL 99182. In the case at bar the interests of appellant parents and at least five of the Smith children are aligned. All seek reunification of the family. Thus any error prejudicial to the children's interest in reunification is similarly prejudicial to the parents' interest. We find that the parents, appellants herein, have standing to raise the issue as an assignment of error. This is especially true in this instance where it is asserted that the minor children were denied proper legal counsel.
Id. See, also, In re Williams, 101 Ohio St.3d 398,2004-Ohio-1500, ¶ 25 (stating, "we recognize that there is a dichotomy in finding, as many courts of appeals have, that whenthe interests of parent and child are aligned a parent hasstanding to raise the child's deprivation of counsel as an issueon appeal and at the same time finding that the parent's attorney is unable to adequately represent the interests of the child." [Emphasis added.]).
 {¶ 13} Here, both Stella and Heather expressed the desire to be adopted because they could never feel secure at appellant's home. (See Aug. 6, 2003, Tr. 154-155.) Appellant desired reunification. Thus, the interests of the appellant parent and Stella and Heather were not aligned. Accordingly, it does not appear that appellant has standing to raise as error, in this appeal, the issue of deprivation of counsel for the children.
 {¶ 14} However, even assuming that appellant has standing to assert her first assignment of error, appellant waived this issue. "Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal." Stores Realty Co. v. City of Cleveland, Bd. of Bldg.Standards and Bldg. Appeals (1975), 41 Ohio St.2d 41, 43, citingSnyder v. Standford (1968), 15 Ohio St.2d 31, and Oney v.Needham (1966), 6 Ohio St.2d 154. In limited circumstances, an appellate court may apply the doctrine of plain error and review an issue otherwise deemed waived.
 {¶ 15} The Supreme Court of Ohio has stated:
* * * In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. * * *
Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121.
 {¶ 16} On the second day of trial, the attorney previously appointed to represent the interests of Stella and Heather withdrew as attorney for these children. The court specifically asked appellant's counsel to state any objection to the issue of the attorney's voluntary withdrawal as the attorney for the children, and the "non-appointment of anyone to replace her for the duration of this trial." (July 8, 2003, Tr. 6.) Appellant's trial counsel stated no objection to the withdrawal of counsel for Stella and Heather and did not object to the procedure outlined by the court if circumstances necessitated the appointment of counsel later in the proceedings. Id. at 6, 8.[3]
 {¶ 17} Under the circumstances of this case, we conclude that this is not a case that warrants the application of the plain error doctrine, especially considering the fact that the interests of the children were not aligned with the appellant mother but were consistent with the guardian ad litem. In other words, an application of the doctrine is not needed to prevent a miscarriage of justice.
 {¶ 18} Based on the foregoing reasons, we overrule appellant's first assignment of error.
 {¶ 19} In her second assignment of error, appellant asserts that FCCS did not prove its case by clear and convincing evidence and that the decision of the trial court was against the manifest weight of the evidence.
 {¶ 20} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. This standard applies to the review of permanent custody judgments. See, e.g., In reThompson, Franklin App. No. 02AP-557, 2003-Ohio-580, ¶ 48. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc.v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 21} We observe that "[i]t is well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes (1997), 79 Ohio St.3d 46, 48, citing In reMurray (1990), 52 Ohio St.3d 155. Furthermore, "permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.' * * * Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" In re Hayes, at 48, quoting In re Smith (1991), 77 Ohio App.3d 1.
 {¶ 22} However, pursuant to R.C. 2151.414(B)(1), a court may grant permanent custody of a child to a state agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 23} As this court recognized in In re Thompson, supra, at ¶ 49:
Pursuant to R.C. 2151.414(B)(1)(d), when a child has been in the custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, a trial court need not engage in an analysis of whether the child can or should be placed with either parent within a reasonable time. * * * Instead, the only consideration in such a case is the best interests of the child, which is determined by consideration of the factors set forth in R.C. 2151.414(D) in light of the facts of the particular case.
(Citation omitted.) Although the trial court did not explicitly reference R.C. 2151.414(B)(1) in its decision, it did comply with the statute's requirements by making the requisite findings when it granted permanent custody of the children to FCCS.
 {¶ 24} Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986),25 Ohio St.3d 101, 104.
 {¶ 25} The trial court determined that Stella, Heather, and Christopher Johnson "had been in the temporary custody of a public children services agency under one or more separate orders of disposition issued under section 2151.353 or 2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period." (Dec. 4, 2003 Decision and Journal Entry, at 11.) More specifically, the trial court determined that, at the time of its decision, the children had been in the temporary custody of FCCS for almost three years. Id. Upon our review of the record, we conclude that the trial court correctly determined that the children had been in temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d) was established by clear and convincing evidence.
 {¶ 26} Because we find that R.C. 2151.414(B)(1)(d) was established, we must determine whether the trial court's finding that permanent custody of Stella, Heather, and Christopher Johnson to FCCS is in the children's best interest was supported by competent, credible evidence. In determining the best interest of a child at a permanent custody hearing, the court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
 {¶ 27} The trial court recognized in its decision that it is undisputed that appellant "is a hard worker, maintained regular and consistent contact with all of her children, is appropriate as a caretaker when she is with the children, loves the children, wants them to live with her, and they love her." (Dec. 4, 2003, Decision and Journal Entry, at 11.) However, the trial court also observed that "[appellant] has had almost three years * * * to obtain and sustain sobriety and to emotionally and physically distance herself from the sexual abuser of her children. She did not achieve either, leaving her children at serious risk." Id.
 {¶ 28} Regarding R.C. 2151.414(D)(1), there have been allegations that Gary Wolford has sexually abused Stella and Heather. Amanda Zook, an expert in child and family therapy, testified that Heather has indicated that she fears that her father, Gary Wolford, is going to find her and hurt her. According to Ms. Zook, if Heather were to see Gary Wolford, "she'd have a very negative reaction" because "it'd be a trigger for the trauma that she endured from him." (July 9, 2003, Tr. 96.) Regarding Heather's relationship with appellant, Ms. Zook testified as follows:
She likes to see her mother at visits. I think she really looks forward to that every week. She has told me that she ____ in the past I think has wanted to go back to live with mom, but has also said that she doesn't want to do that because she's scared that Gary would be there and that makes that choice a bad one. That she wouldn't want to move back there because she'd be scared of Gary. * * *
Id. at 96-97.
 {¶ 29} Lisa Skipper, an expert in child and family therapy, testified that Stella is scared of her father, Gary Wolford. According to Ms. Skipper, the basis of Stella's anxiety with respect to her father is the reported sexual abuse. (July 9, 2003, Tr. 41.) According to Ms. Skipper, if Stella saw Gary Wolford, Ms. Skipper would expect Stella to experience a negative reaction, including increased anxiety and intense fear. Id. at 30. Also, Ms. Skipper testified that Stella's anxiety relating to being returned to appellant is based on "an incident of mom physically abusing Stella, as well as the fear that Gary would be around." Id. at 41.
 {¶ 30} The trial court determined that appellant's testimony regarding her contacts with Gary Wolford to be "less than fully credible." (Dec. 4, 2003 Decision and Journal Entry, at 11.) Sandi Inuzuka, who was assigned as a caseworker to this case by FCCS, testified that appellant lied to her about appellant's contact with Gary Wolford. (See Aug. 5, 2003, Tr. 68-69, 118.) Appellant testified that she obtained a restraining order against Gary Wolford. Appellant also testified that Gary Wolford has family and a friend that live in appellant's neighborhood. In a complaint, alleging that Gary Wolford possessed an open container of beer while in a motor vehicle, which was filed in the Franklin County Municipal Court on June 23, 2003, and signed by Gary Wolford, Gary Wolford's listed address is the same as appellant's address. (See FCCS Exhibit 1; Apr. 9, 2003, Tr. 46.) Moreover, on March 31, 2003, Gary Wolford was shot by an unidentified gunman three or four houses from appellant's apartment.
 {¶ 31} The evidence at trial indicated a positive relationship between the children and the foster parents and the other children in the foster parents' home. For example, when appellant was asked about the children's foster home, appellant replied, "[t]hey couldn't be in a better place." (July 8, 2003, Tr. 154.)
 {¶ 32} Regarding R.C. 2151.414(D)(2), John Ferguson, a social worker for the Franklin County Public Defender's Office, testified that the children expressed that they could never feel safe with their mother. Mr. Ferguson interviewed Stella and Heather on three separate occasions and testified that "[t]hey are fearful of mom allowing strangers in the home. Allowing Gary back into the home. They both described the abuse that Gary had done to them." (Aug. 6, 2003, Tr. 155.) According to Mr. Ferguson, the children's wishes "are that they be adopted and be able to join and become part of a new family." Id. at 155. Christopher was too young to verbalize his wishes. The guardian ad litem recommended that the trial court grant permanent custody to FCCS.
 {¶ 33} The trial court agreed with the guardian ad litem's determination that the children are in need of a legally secure placement, and that legally secured placement cannot be achieved without a grant of permanent custody to FCCS. (Dec. 4, 2003, Decision and Journal Entry, at 12.) Regarding R.C. 2151.414(D)(3) and (4), the evidence indicates that the children have experienced multiple placement changes, and that the children have been in the temporary custody of FCCS since September 2000.
 {¶ 34} Furthermore, the trial court considered the request for custody by the paternal grandmother, Ms. Whitlock-Wolford, but determined that placement with this relative of the children was not in their best interest. The court noted that Stella is bonded to Ms. Whitlock-Wolford. However, Ms. Whitlock-Wolford testified that she was unaware of any drug or alcohol problem that appellant may have. Also, Ms. Whitlock-Wolford did not believe that her son, Gary Wolford, sexually abused his daughters. When appellant was asked how she would feel about Gary Wolford's mother, Ms. Whitlock-Wolford, receiving custody if appellant did not, appellant testified, "I don't think I'd * * * want her to have it. And I know that would hurt her feelings to hear me say that." (July 8, 2003, Tr. 151.) Appellant stated that she did not want the "possibility of Gary running into the children." Appellant also stated her concern with respect to Ms. Whitlock-Wolford's health.
 {¶ 35} In its decision to grant permanent custody to FCCS, the trial court also considered appellant's sobriety. Appellant testified that she was taking large doses of prescription pain medication when she was pregnant with Christopher. (Apr. 9, 2003, Tr. 59-60.) She also testified that she was addicted to these drugs at the time of her pregnancy with Christopher, but she did not inform her prenatal care providers of her addiction. Id. at 61.
 {¶ 36} When appellant completed a drug and alcohol assessment, it was recommended that appellant participate in a "methadone clinic." (Apr. 9, 2003, Tr. 75.) Appellant testified that she decided not to follow this recommendation. Id. at 75-76. Instead, appellant went to Crittendon Family Services ("Crittendon"). Id. at 76. According to appellant, things did not work out at Crittendon because of scheduling issues with her counselor. Id. at 78. Appellant did not complete the objectives of the case plan with her participation at Crittendon. (Aug. 5, 2003, Tr. 14.) Appellant's counselor at Crittendon, Brenda Knox, recommended that appellant go to Project Linden or Maryhaven.
 {¶ 37} Appellant started a drug treatment program at Project Linden in October 2001. Appellant began her participation at Project Linden with the "intensive outpatient program." At Project Linden, appellant was being taught the warning signs of relapse and how to prevent relapses. (Apr. 9, 2003, Tr. 85.) Angela Cornelius, Executive Director of Project Linden and stipulated expert in chemical dependency treatment, testified that the clinical psychologist diagnosed appellant as opiate dependent, cannabis dependent, sedative dependent, and abusive of alcohol. (July 8, 2003, Tr. 21.) Appellant's trial counsel did not object to this testimony.
 {¶ 38} During the course of appellant's drug treatment, appellant tested positive for cocaine use multiple times. In testimony that appellant's counsel did not object to, Ms. Cornelius testified that appellant tested positive for cocaine use on July 1, 3, and 11, and August 26, 2002. Id. at 25. Appellant admitted to using cocaine three times during her treatment at Project Linden. (Apr. 9, 2003, Tr. 100-101.)
 {¶ 39} In the beginning of August 2002, it was recommended that appellant's participation in the intensive outpatient services at Project Linden be extended. However, given the results of appellant's positive screen for cocaine on August 26, 2002, appellant would have been required to participate "in a higher level of care." (July 8, 2003, Tr. 26.) Appellant did not return to Project Linden after her visit on September 4, 2002. According to Ms. Cornelius, appellant was terminated from the Project Linden program in September 2002 because of noncompliance; namely, nonattendance. Id.
 {¶ 40} Instead of completing the program at Project Linden, appellant went to Community Counseling at "The Bridge." According to appellant, she started a program at The Bridge in September 2002 and completed the program in December 2002. However, according to Sandi Inuzuka, the level of treatment at The Bridge was not intense enough for appellant, at least in part because there was no drug screening. Furthermore, according to Sandi Inuzuka, even though appellant completed the program at Community Counseling and "got her certificate," appellant did not follow through with the recommendations given to her, including her participation in a relapse prevention program. (Aug. 5, 2003, Tr. 22.) Appellant did go to the Columbus Health Department for relapse prevention. However, she did not complete this relapse prevention program.
 {¶ 41} Upon our review of all the evidence in this case, including the evidence outlined above, we conclude that the trial court's determination that FCCS had established, by clear and convincing evidence, that permanent custody of the children to FCCS is in the children's best interest, was supported by some competent, credible evidence.
 {¶ 42} Based on the foregoing, we conclude that the judgment of the trial court, granting permanent custody of appellant's minor children, Stella, Heather, and Christopher Johnson to FCCS for purposes of adoption was not against the manifest weight of the evidence. Accordingly, we overrule appellant's second assignment of error.
 {¶ 43} For the foregoing reasons, both of appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Klatt and Sadler, JJ., concur.
[1] We note that, according to appellant's testimony at trial, the caseworker found Heather alone outside, not Stella, who was at school. (See Apr. 9, 2003, Tr. 57-58.) Appellant testified to her belief that Heather was three years old at the time. Id.
[2] At trial, this attorney withdrew from the case.
[3] Appellant's counsel did not object to the withdrawal of Stella and Heather's attorney and the non-appointment of an attorney to replace her, but did state, "Your honor, my client doesn't agree that the children's interest conflicts with [appellant's], she believes it's one in the same." Id. at 6. However, subsequently, when the trial court stated that the parties had stipulated that no conflict existed between the children's wishes and the recommendation of the guardian ad litem, appellant's counsel did not object. (See id. at 7.) Furthermore, appellant's counsel stated no objection to the procedure outlined by the trial court for appointing counsel for the children, if the children's wishes changed and a conflict arose between the children's wishes and the guardian ad litem's recommendation. (See id. at 7-8.)