[Cite as *In re E.C.*, 2023-Ohio-2072.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | No. 22AP-107 |
| E.C., | : | (C.P.C. No. 16JU-9270) |
| (R.H., | : | (REGULAR CALENDAR) |
| Appellant). | : | |
| In the Matter of: | : | No. 22AP-108 |
| D.L. et al., | : | (C.P.C. No. 16JU-9271) |
| (R.H., | : | (REGULAR CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on June 22, 2023

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce* for appellant. **Argued:** *Timothy E. Pierce.*

**On brief:** *Robert J. McClaren*, for Franklin County Children Services. **Argued:** *Robert J. McClaren.*

APPEALS from the Franklin County Court of Common Pleas
Division of Domestic Relations, Juvenile Branch

BOGGS, J.

{¶ 1} Appellant, R.H. ("mother"), appeals from the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting appellee, Franklin County Children Services' ("FCCS"), motion for permanent custody of her minor children, E.C., D.L., and I.L. For the following reasons, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  This case concerns three of mother's children: (1) E.C., a girl born July 20, 2006, (2) D.L., a boy born July 12, 2010, and (3) I.L., a girl born February 9, 2012.  R.C. is the biological father of E.C. and is incarcerated in Michigan for second-degree murder.  D.C. is the biological father of D.L. and I.L.

### A.  Procedural History

{¶ 3}  On August 1, 2016, FCCS filed complaints regarding mother and her care of E.C., D.L., and I.L.  FCCS received a referral regarding the family while they were living at the YWCA shelter in Columbus, after moving from Michigan.  The complaints indicated that mother was not properly supervising the children and that they were not enrolled in school.  On October 4, 2016, all three children were adjudicated dependent and placed into the temporary custody of FCCS.

{¶ 4}  On December 20, 2017, the court terminated temporary custody and awarded legal custody of E.C. to a relative of mother, T.S.  FCCS also placed I.L. and D.L. with T.S. through kinship care on December 23, 2017.  However, several months later FCCS learned that T.S. had returned the children to mother and that T.S. was no longer willing to take care of the children.  The children were then placed in a foster home on April 19, 2018, with a foster mother with whom they remain.

{¶ 5}  On June 18, 2018, FCCS filed a motion for permanent custody of D.L. and I.L.  On November 14, 2018, the court awarded temporary court commitment of E.C. to FCCS, and FCCS filed a motion for permanent custody for E.C. on December 27, 2018.

### B. Legal Custody Motion

{¶ 6}  On June 22, 2017, the paternal grandparents of D.L. and I.L. ("paternal grandparents"), filed a motion for legal custody of their grandchildren.[1]  Since the paternal grandparents reside in Michigan, the court informed them that the state of Michigan would need to complete an Interstate Compact on Placement of Children ("ICPC") evaluation to determine whether the paternal grandparents' home and circumstances were suitable for taking custody of D.L. and I.L.

---

[1] Previously on August 3, 2016, the paternal grandparents had filed a pro se motion requesting legal custody of D.L. and I.L. but withdrew the motion at the conclusion of the October 4, 2016 hearing.

{¶ 7}   At a subsequent review hearing, FCCS informed the trial court that the Michigan ICPC evaluation ultimately rejected the paternal grandparents for placement, and the paternal grandfather indicated that he thought the cause of the rejection was his criminal conviction from 35 years prior.   He indicated that the paternal grandparents currently had foster children in the home and that they had to appeal their removal from the home.

> The Magistrate: * * * I'm hearing that the agency saying that your - - your interstate compact has been denied; do you know anything about that?
>
> [Paternal Grandfather]: Yes.  We had - - we have three more guardian - - we have three more kids in the home and the - - the incident came of where I had a conviction thirty-five years ago, and we went to the Appellate Court and they reviewed it and they view me - - they –
>
> The Magistrate: Overturned it?
>
> [Paternal Grandfather]: Yes, they overturned it. So, had them bring the kids back to our home. They then been in our home for over two years with the conviction, which is thirty-five years old.

(June 30, 2017 Tr. at 3-4.)

{¶ 8}   At the hearing, FCCS's counsel clarified that the appealed decision paternal grandfather referenced was related to the placement of the foster children two years prior, he questioned whether Michigan prepared the ICPC evaluation knowing of paternal grandfather's successful appeal.   The magistrate requested that FCCS reorder the ICPC evaluation.

{¶ 9}   At another hearing on August 18, 2017, FCCS indicated that Michigan had again rejected the paternal grandparents for placement despite knowing of the previous successful appeal to foster when it denied the ICPC placement before.  The court scheduled another review hearing for December 20, 2017 to allow the paternal grandparents time to obtain counsel and to appeal or request the state of Michigan to reconsider the ICPC decision.

{¶ 10}  On April 20, 2018, FCCS indicated that the state of Michigan was still denying the ICPC approval for placement.  The magistrate dismissed the paternal grandparents' legal-custody motion, stating that the court could not address it at the time, ordered FCCS

to request yet another ICPC evaluation from the state of Michigan, and maintained the paternal grandparents' party status.

{¶ 11} On July 12, 2018, paternal grandparents' counsel objected to the trial court's dismissal of their legal-custody motion. Ultimately the trial court reinstated the custody motion, stating, "I don't think it should have been dismissed if there was a second ICPC that was ordered, and I think it's duplicative. It is delaying their ability to prosecute or not prosecute the motion. [The Magistrate] didn't dismiss them as parties, so why dismiss the motion. So I'll reinstate the motion." (July 12, 2018 Tr. at 8.)

{¶ 12} Despite paternal grandparents' motion being reinstated, prosecution of their motion did not occur, and the trial for permanent custody was delayed over three years. On November 14, 2018, the trial court held an annual review, but encountered service issues with mother. The trial court also wanted to keep the children's cases together, but FCCS had not yet filed its motion for permanent custody of E.C., so proceedings were continued until April 22, 2019. Hearings for the permanent custody motions previously scheduled for February 21, 2019 and January 16, 2020 were continued to allow a new guardian ad litem ("GAL"), to prepare for trial. Trial on the permanent custody motions initially scheduled for March 15, 2021, were postponed to August 10, 2021, again, due to service issues, and then finally set for September 14, 2021.

{¶ 13} Trial on FCCS's motions for permanent custody began on September 14, 2021. Paternal grandparents were not present and had not responded to their counsel, who had offered to arrange for their participation via Zoom.

> [Paternal grandparents counsel]: * * * I'll make a Motion to Withdraw too, Your Honor. I did get a hold of them - - the grandmother, at the last second she got back with me, and I asked 'em (sic) why they can't be here. [A]nd they said, because he has - - he had open heart surgery or something so he can't travel. And I said, "Well, can you do it by ZOOM?" They never replied to me. And it's just been always very difficult the last couple months to get - - get in touch with them. And for them not to - - to keep in contact with me and not to be here today, I would - - you know, I definitely can't effectively represent em' (sic.).

(Sept. 14, 2021 Tr. at 6.)

{¶ 14} The court allowed paternal grandparents' counsel to withdraw and granted FCCS's motion to dismiss the paternal grandparents' legal-custody motion due to failure to prosecute. *Id.*

### C. Trial for Permanent Custody

{¶ 15} During the trial on permanent custody, the court heard testimony from the assigned FCCS caseworker and the children's GAL. Mother, both fathers, and paternal grandparents were not present for trial. The caseworker testified that mother failed to complete random drug screens, psychological assessments, drug and alcohol assessments, and failed to follow the recommendations from those assessments she did complete. For instance, mother failed to complete treatment after being diagnosed with opioid dependency and failed to complete any random drug screens. The caseworker also testified that mother has not had independent, stable housing throughout the case and was often living at a shelter or with relatives or friends. The caseworker also noted that mother has claimed that she is employed but has never provided paycheck stubs or proof of employment.

{¶ 16} The caseworker also provided testimony about E.C., D.L., and I.L. and their time in the temporary custody of FCCS. The caseworker testified that the children are very bonded with one another and are in a comfortable, stable household that meets their treatment needs for autism, intellectual disorder, pica, post-traumatic stress disorder, and attention-deficit hyperactivity disorder. The caseworker also reported that the children are very bonded with their foster mother and recommended that FCCS be awarded permanent custody with the hopes that the children will remain with their current foster mother.

{¶ 17} The GAL for E.C., D.L., and I.L. provided testimony on his observations of the children with their foster family. The GAL stated that the children are bonded to one another and that he has seen improvements in D.L.'s behavior after his foster mother sought treatment for his autism, and E.C.'s success in school, including her interest in now going to college and having attained the honor roll. The GAL testified that all three children wish to remain with their foster mother and that his recommendation would be for permanent custody to be awarded to FCCS, as their current foster placement is foster-to-adopt.

{¶ 18} The GAL also testified that he visited and met with the paternal grandparents in Michigan. The GAL stated that while he thought they were "good people," it did not ultimately change his recommendation because the three children were very bonded with one another and the paternal grandparents were seeking custody of only D.L. and I.L., but not E.C., who was not a blood relative. (Sept. 14, 2021 Tr. at 78.) The GAL was concerned that the paternal grandparents had not visited D.L. and I.L. since December 2020 and that D.L. and I.L. have not expressed a desire to live with their grandparents to him.

{¶ 19} On January 27, 2022, the trial court awarded permanent custody of E.C., D.L., and I.L. to FCCS. The trial court found that FCCS had made reasonable efforts to prevent or eliminate the need for removal of the children and to return them to their mother. The case plan for mother included, but was not limited to, objectives that she utilize medical, psychiatric, psychological resources; submit to random drug screens; submit to an alcohol and drug assessment and follow all recommendations; successfully complete parenting mentoring and parenting classes; submit to a mental-health assessment and follow recommendations; maintain income and safe, stable housing; meet with the caseworker; and visit the children on a regular basis.

{¶ 20} The trial court found that she failed to address her mental health, substance abuse, and parenting issues, and she failed to maintain consistent contact with FCCS and her children. It also found that mother was unable to maintain stable or independent housing or establish a stable income. Further, she has been diagnosed with a chronic mental or emotional illness, physical disability or chemical dependency so severe that it makes her unable to provide an adequate permanent home for the children. The court found that mother suffers from substance abuse issues, had been unable to successfully complete substance abuse treatment, and had been arrested and incarcerated several times in 2017 and 2018.

{¶ 21} The trial court also found that E.C.'s father, R.C., is currently incarcerated in Michigan with an earliest release date of August 7, 2028 and therefore would be unable to take care of E.C. The trial court also found that D.L. and I.L.'s father, D.C., lacked housing, was unable to provide for the children with a stable income, and had not utilized resources provided by FCCS to support his medical, psychiatric, and psychological needs to resume his parental duties.

{¶ 22} The court found that "[n]o suitable relatives are willing or able to assume legal custody of the Minor Children. All attempted interim, home and kinship placements have failed. There are no other pending motions for custody." (Jan. 27, 2022 Decision & Jgmt. Entry at 9.) The court found by clear and convincing evidence that granting permanent custody to FCCS was in E.C., D.L., and I.L.'s best interest. On February 17, 2022, mother filed her notice of appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 23} In her appeal, mother identifies the following assignments of error:

> [1.] The lower court plainly erred by admitting and relying upon hearsay evidence regarding the State of Michigan's Interstate Compact on Child Placement (ICPC) studies which related to the suitability of paternal grandparents [] to be legal custodians for the children E.C. and/or D.L. and/or I.L. pursuant to the [paternal grandparents]' motion requesting the same. The court's admission and consideration of this hearsay evidence violated Appellant's Right to Due Process of Law under the Fifth and Fourteenth Amendments of the United States Constitution, the Due Course of Law provisions of Article I, Sections 1 and 16 of the Ohio Constitution. Evid. R. 103(D), Evid. R. 802 and R.C. 5103.23.

> [2.] The lower court erred when it dismissed paternal grandparents [] legal custody motion at the Appellant's parental termination trial. The lower court's actions violated the Appellant's Right to Due Process of Law under the Fifth and Fourteenth Amendments of the United States Constitution, the Due Course of Law provisions of Article I, Sections 1 and 16 of the Ohio Constitution, R.C. 2151.011(B)(2) and (B)(50), R.C. 2151.353(A)(3), Juv. R. 2(V) and 2(II), and R.C. 5103.23.

> [3.] The lower court's decision terminating Appellant's parental rights to parent E.C., D.L., and I.L. was not founded on sufficient evidence and ran against the manifest weight of the evidence.

## III. ANALYSIS

{¶ 24} Parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio has recognized the essential and basic rights of a parent to raise

his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). Those rights, however, are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Thus, in certain circumstances, the state may terminate the parental rights of natural parents when it is in the best interest of the child. *In re E.G.,* 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00 CA 2694, 2000 Ohio App. LEXIS 4550 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist.1994).

{¶ 25} A trial court may grant permanent custody of a child to a public children services agency pursuant to R.C. 2151.414(B)(1) if it determines by clear and convincing evidence that any of the circumstances in R.C. 2151.414(B)(1)(a) through (d) exist and that " 'such relief is in the best interests of the child.' " *In re G.E.H.*, 10th Dist. No. 15AP-966, 2016-Ohio-3535, ¶ 52, quoting *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 9. On appeal, we will not reverse a trial court's decision in a permanent custody case unless it is against the manifest weight of the evidence. *In re I.R.*, 10th Dist. No. 04AP-1296, 2005-Ohio-6622, ¶ 4, citing *In re Andy-Jones*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28. Judgments in permanent custody proceedings are not against the manifest weight of the evidence "when all material elements are supported by competent, credible evidence." *J.T.* at ¶ 8.

## A. Assignment of Error No. 1

{¶ 26} We now turn to mother's first assignment of error. She argues that all testimony regarding the ICPC report, which was not objected to at trial, was hearsay and that its admission violated her due process rights under the United States Constitution and the Ohio Constitution. We are not persuaded.

{¶ 27} In reviewing errors that were not raised at trial, this court applies the doctrine of plain error. "Generally, this court will not in the first instance consider errors that the appellant could have called to the trial court's attention." *In re J.L.*, 10th Dist. No. 15AP-889, 2016-Ohio-2858, ¶ 59, citing *In re Pieper Children*, 85 Ohio App.3d 318, 328 (12th Dist.1993). However, in limited circumstances, we may apply the doctrine of plain error to review an issue that otherwise we would deem to have been waived. *J.L.* at ¶ 59, citing *In re Johnson*, 10th Dist. No. 03AP-1264, 2004-Ohio-3886, ¶ 14. "[A] 'plain error' is one that is 'obvious and prejudicial although neither objected to nor affirmatively waived.' " *Id.* at

¶ 60, quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982). "An error is prejudicial if it 'impacted the party's "substantial rights" by affecting the outcome of the trial.' " *Id.*, quoting *In re C.C.*, 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 27. "In the context of civil appeals, the plain error doctrine is not favored." *Id.*, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. "[R]eviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss* at 121.

{¶ 28} Here, mother argues that because Michigan's ICPC report was never entered into evidence, nor did Michigan authorities provide testimony under oath as to their findings, all the testimony related to the ICPC report is inadmissible hearsay. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." However, hearsay testimony is admissible if it falls within one of the enumerated exceptions in Evid.R. 803, which include records of regularly conducted activity under Evid.R. 803(6) and public records and reports under Evid.R. 803(8). This court has previously held that a social worker can testify to the contents of a government record and to the contents of the social worker's file:

> Even if hearsay were barred in dispositional hearings, the social worker could competently testify to the contents of the agency's case file. Evid.R. 803(6) creates a hearsay exception for records kept in the ordinary course of business. *See In re McCullough*, 8th [Dist.] No. 79212, 2001 Ohio App. LEXIS 5392 (Dec. 6, 2001). Likewise, Evid.R. 803(8) creates a hearsay exception for public records and reports which set forth the activities of an agency or office and contain matters observed which, pursuant to a duty of law, the agency or office has a duty to report. *See In re Brown*, 4th [Dist.] No. 06CA4, 2006-Ohio-2863, ¶ 32. Under either exception, a social worker's testimony concerning records kept by the agency, statements made by a parent, and reports taken during the course of the agency's investigation, are admissible because the contents of her file, including the reports against the family, had been compiled as part of the Agency's activities. *In re D.M.*, 5th Dist. No. 18 CA 18, 2018-Ohio-4737, ¶ 27.

*In re S.C-N.*, 10th Dist. No. 21AP-544, 2022-Ohio-3064, ¶ 89.

{¶ 29} While the ICPC report in this case was not admitted into evidence here, we note that other Ohio courts have found that ICPC reports do not constitute hearsay. *See In re Ranker*, 11th Dist. No. 99-P-0072, 2000 Ohio App. LEXIS 4662 (Oct. 6, 2000); *In re G.D.* 9th Dist. No. 27855, 2015-Ohio-4669; *In re Evancic*, 11th Dist. No. 2001-L-032, 2001 Ohio App. LEXIS 3364 (July 27, 2001). Here, FCCS provided testimonial evidence as to the state of Michigan's rejection of paternal grandparents as a suitable placement. We do not find that this testimony was inadmissible hearsay. Rather, any testimony regarding reports taken during the course of FCCS's investigation, which are part of the agency's file, is akin to the admissible testimony in *S.C-N.* and admissible under Evid.R. 803(6).

{¶ 30} Even assuming *arguendo* that testimony about the ICPC report was inadmissible hearsay, we do not find that mother has demonstrated resulting prejudice, as required to establish plain error. Despite mother's assertions, we do not agree that the trial court was strongly influenced by the ICPC report. The trial court's decision makes no mention of the ICPC report, but simply notes there were no suitable relatives that were willing or able to assume legal custody. The trial court was also not bound to consider family placement prior to its award of permanent custody to FCCS. *See In re L.M.*, 10th Dist. No. 10AP-445, 2010-Ohio-5447; *In re Zorns*, 10th Dist. No. 02AP-1297, 2003-Ohio-5664. The trial court weighed the factors under R.C. 2151.414(B) and, without mentioning the ICPC report, came to the conclusion that permanent custody was in the best interests of the children.

{¶ 31} The children's GAL also testified that, even had the ICPC results been different, he still had concerns about separating the deeply bonded siblings by placing D.L. and I.L., but not E.C., with the paternal grandparents. Finally, to the extent mother argues that the trial court improperly considered the testimony regarding the ICPC report in dismissing the paternal grandparents' legal-custody motion, we reject that argument because the trial court dismissed that motion due to grandparents failure to prosecute. For these reasons we overrule mother's first assignment of error.

**B. Assignment of Error No. 2**

{¶ 32} Mother's second assignment of error argues that the trial court erred by dismissing the paternal grandparents' legal-custody motion, thereby infringing the

residual parental rights she would have maintained if legal custody had been granted to the paternal grandparents. Before considering the merits of mother's second assignment of error, however, we must first consider whether she has standing to appeal the dismissal of the paternal grandparents' legal-custody motion.

{¶ 33} A party has standing when the party has a " 'right to make a legal claim or seek judicial enforcement of a duty or right.' " *Ohio Pyro Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27, quoting *Black's Law Dictionary* 1442 (8th Ed.2004). This court has held that "[a]n appellant cannot raise issues on another's behalf, especially when that party could have appealed the issues appellant posits." *In re D.T.*, 10th Dist. No. 07AP-853, 2008-Ohio-2287, ¶ 8; *In re J.B.*, 10th Dist. No. 08AP-1108, 2009-Ohio-3083, ¶ 18; *In re J.C.*, 10th Dist. No. 09AP-1112, 2010-Ohio-2422, ¶ 15; *In re S.G.D.F.*, 10th Dist. No. 16AP-57, 2016-Ohio-7134. The trial court did not decide the paternal grandparents' motion for legal custody on the merits. Instead, the court dismissed the paternal grandparents' motion for their failure to prosecute, and the paternal grandparents have not appealed that dismissal. While mother supported the paternal grandparents' legal custody motion in the trial court, it remained the paternal grandparents' obligation to prosecute that motion and, if necessary, to appeal any adverse decision.

{¶ 34} We note that mother cites case law from other Ohio courts which have held that a parent has standing to appeal a trial court's denial of a relative's motion for legal custody to the extent that the denial of the motion affected the parent's residual parental rights. *See In re Evens*, 9th Dist. No. 19489, 2000 Ohio App. LEXIS 282 (Feb. 2, 2000); *In re Hiatt*, 86 Ohio App.3d 716 (4th Dist.1993).

{¶ 35} However, we find those cases distinguishable in that the relatives in those cases fully prosecuted their motions for legal custody, unlike paternal grandparents here. Paternal grandparents did not appear for trial on their motion and FCCS's competing motion for permanent custody, even when their attorney afforded them the opportunity to participate in the proceedings remotely. Because the motion for legal custody was not fully prosecuted below, mother does not have standing to challenge the dismissal of that motion for failure to prosecute. We therefore overrule mother's second assignment of error.

## C.  Assignment of Error No. 3

{¶ 36}  Finally mother argues that the trial court's decision to terminate her parental rights to E.C., D.L., and I.L. was against the manifest weight of the evidence.  Judgments in permanent custody proceedings are not against the manifest weight of the evidence "when all material elements are supported by competent, credible evidence." *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8.  The juvenile court may grant permanent custody of a child to a public children services agency if the court determines by clear and convincing evidence that: (1) it is in the child's best interest, and (2) one of the factors in R.C. 2151.414(B)(1) applies.[2]  R.C. 2151.414(B)(1); *In re L.B.*, 10th Dist. No. 19AP-644, 2020-Ohio-3045, ¶ 24.  In deciding whether granting permanent custody is in the child's best interest, the court must consider all relevant factors, including specific factors set forth in R.C. 2151.414(D)(1)(a) through (e).  "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 37}  "[I]n reviewing a judgment under the manifest weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *L.B.* at ¶ 27.  This court must make every reasonable presumption in favor of the juvenile court's findings of fact and judgment, and, if the evidence is susceptible of more than one construction, give it the interpretation most consistent with the juvenile court's judgment. *Id.* at ¶ 28.  This court has also held that a juvenile court's discretion in determining whether permanent custody is in the child's best interest " ' "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." ' " *In re A.L.D.*, 10th Dist. No. 08AP-238, 2008-Ohio-3626, ¶ 8, quoting *In re Hogle*, 10th Dist.

---

[2] There is no dispute that R.C. 2151.414(B)(1)(d) applies as the children have been in temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period.

No. 99AP-944, 2000 Ohio App. LEXIS 2813 *12-13 (June 27, 2000), quoting *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist.1994).

{¶ 38} We do not agree with mother's argument that the trial court's judgment, terminating her parental rights and granting permanent custody to FCCS, was against the manifest weight of the evidence. The trial court's decision was supported by competent, credible evidence that permanent custody was in the best interests of the children. At the time of trial, mother had not made progress in achieving her case plan objectives. For instance, the caseworker testified that mother missed several visits over the course of the time the children were in the temporary custody of FCCS, failed to complete any random drug screens, failed to successfully obtain treatment for opioid dependence, was unable to maintain stable housing, and failed to provide any paycheck stubs or proof of employment. Both the caseworker and the GAL testified that all three children were bonded with their foster mother and wished to remain with her. These factors all strongly weigh in favor of the trial court's granting of permanent custody to FCCS, and we therefore overrule mother's third assignment of error.

## IV.  CONCLUSION

{¶ 39} Having overruled all of mother's assignments of error, we affirm the trial court's judgments awarding permanent custody of E.C., D.L., and I.L. to FCCS.

*Judgments affirmed.*

BEATTY BLUNT, P.J. and DORRIAN, J., concur.

———————————